# RHODERICK BOYD *v.* COMMISSIONER
# OF CORRECTION
# (AC 31351)

Gruendel, Beach and Schaller, Js.

Argued April 12—officially released July 19, 2011

*Mary Boehlert*, special public defender, for the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Rhoderick Boyd, appeals following the habeas court's granting of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claims of ineffective assistance of trial counsel. Specifically, he claims that his trial counsel, Donald O'Brien, rendered ineffective assistance because (1) he failed to object on two occasions to testimony offered by the state's expert witness, a psychiatrist who testified that the victim had been sexually assaulted, and (2) he did not undertake an independent investigation or take photographs of the area of the building where the assault took place. We affirm the judgment of the habeas court.

The petitioner's conviction was the subject of a direct appeal before this court, *State* v. *Boyd*, 89 Conn. App. 1, 872 A.2d 477, cert. denied, 275 Conn. 921, 883 A.2d 1247 (2005), overruled in part on other grounds by *State* v. *Kemah*, 289 Conn. 411, 432, 957 A.2d 852 (2008). The following facts and procedural history are relevant to our disposition of the petitioner's claims. After a jury trial, the petitioner was convicted of sexual assault in the first degree, kidnapping in the first degree and assault in the third degree, and was sentenced to an effective prison term of eighteen years incarceration, suspended after fourteen years, and twenty-five years of probation. Id., 2, 6–7. All charges resulted from an incident that occurred in the fall of 1999 while the petitioner was an employee of a corporation that provided food services to a boarding school in Connecticut.[1] Id., 4. The petitioner supervised the sixteen year old victim who, in addition to attending classes at the boarding school, worked in the dining hall as a dishwasher. Id. "On the evening of the assault, the victim was scheduled for a two hour shift. Near the end of her shift, the [petitioner] instructed the victim to go downstairs [to the pot room] to clean large pots and pans. The petitioner grabbed the victim's arm and escorted her into the elevator leading to the lower level"; id., 4–5; and, after exiting the elevator on the lower level, the petitioner physically and sexually assaulted the victim.[2] Id., 5. Additional facts will be set forth as necessary.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] This court concluded on direct appeal that the jury reasonably could have found the following facts about the assault. The petitioner removed the victim's clothes and his own pants, and forced her to touch his penis. *State* v. *Boyd*, supra, 89 Conn. App. 5. He fondled the victim, performed oral sex on her, penetrated her with his finger and ejaculated on her stomach. Id. The petitioner repeatedly slapped the victim when she screamed, and, at two points during the assault, grabbed her hair and slammed her head against the tile floor, causing her to lose consciousness. Id. When the victim

We set forth the appropriate standard of review for a challenge to the denial of a petition for a writ of habeas corpus when certification to appeal is granted. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 122 Conn. App. 637, 641, 999 A.2d 840 (2010), cert. denied, 300 Conn. 901, 12 A.3d 574 (2011). "[O]ur review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

We now set forth the principles of law relevant to the petitioner's claim that O'Brien rendered ineffective assistance. The habeas court determined that the petitioner failed to satisfy the first prong of the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner

recovered consciousness the second time, the petitioner, who had dressed, told her to return upstairs in five minutes and to not tell anyone what had happened. Id.

must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 126 Conn. App. 453, 457, 11 A.3d 730, cert. denied, 300 Conn. 932, 17 A.3d 69 (2011). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable. . . . Only if the petitioner succeeds in [this] herculean task will he receive a new trial." (Internal quotation marks omitted.) Id., 458.

## I

The petitioner first claims that O'Brien rendered ineffective assistance because he failed to object on two occasions to testimony offered by Lucy Puryear, the state's expert witness. We conclude that the petitioner has failed to overcome the presumption that O'Brien's trial strategy was reasonable and, thus, has failed to prove that his performance was deficient.

The following additional facts and procedural history are relevant to the petitioner's claim. After the assault, the victim returned to her room and showered. *State* v. *Boyd*, supra, 89 Conn. App. 5. The day after the assault, "the victim participated in a school volleyball game. During the game, she fell to the ground, striking her head. Following her fall, the victim was unable to move. An ambulance transported her to a hospital, where she received treatment. Thereafter, she returned

to her parents' home. The victim had regained movement in her arms while in the hospital, but was unable to move her legs for several days." Id.

In his direct appeal from his conviction, the petitioner sought review of his claim that the trial court should have, sua sponte, struck certain testimony given by Puryear, a psychiatrist who had treated the victim. "During direct examination, Puryear testified in relevant part as follows:

'[The Prosecutor]: All right. When did [the victim] start having problems . . . ?

'[The Witness]: [The victim] started having problems after the incident.

'[The Prosecutor]: October 21, 1999?

'[The Witness]: Correct.

'[The Prosecutor]: And did she have any history of mental problems before the sexual assault?

'[The Witness]: No, she didn't.'

Puryear subsequently stated that the victim's inability to move following her fall on the volleyball court was 'related to the sexual assault the day before . . . .' " Id., 18.

Because O'Brien failed to object to the testimony during trial, the petitioner sought this court's review of his unpreserved evidentiary claim pursuant to *Golding*[3] and the plain error doctrine embodied in Practice Book § 60-5. Id. This court declined to review the unpreserved claim under either doctrine because the claim was evidentiary, not constitutional, in nature and we were not

---

[3] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), sets forth the familiar four-pronged analysis under which a defendant can prevail on a claim of constitutional error that was not preserved at trial.

persuaded that the court's failure to strike the challenged testimony sua sponte constituted plain error. Id., 19–21. Specifically, we noted that "[a]lthough perhaps the court would have been required to strike this portion of Puryear's testimony after a proper objection, we cannot conclude that the defendant's constitutional rights were implicated or that the defendant received a fundamentally unfair trial."[4] Id., 21 n.14.

As we review the petitioner's claim that O'Brien rendered ineffective assistance under these facts, we are mindful that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal quotation marks omitted.) Diaz v. Commissioner of Correction, 125 Conn. App. 57, 62, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

---

[4] The petitioner alleged in his second amended petition that, by his failure to object at trial, O'Brien's performance was deficient because he "failed to preserve this issue for appeal." The habeas court did not make any findings or rulings concerning this allegation.

The petitioner's brief makes one passing mention of this claimed failure. He otherwise fails to address it independently from his claim that O'Brien's failure to object to the challenged statements allowed the jury to consider them, and that he was prejudiced by those statements. Insofar as this mention can be read as a separate claim, "[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) Paoletta v. Anchor Reef Club at Branford, LLC, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010). Because we conclude that the petitioner has abandoned this claim insofar as it is independent from his first claim, we do not address the related arguments made by the respondent, the commissioner of correction.

"[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted; internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 768, 953 A.2d 685, cert. denied, 289 Conn. 950, 961 A.2d 417 (2008). It is well established that "[a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 417, 991 A.2d 705, cert. denied, 297 Conn. 915, 996 A.2d 279 (2010).

In the present appeal, the petitioner argues that, because there was no medical evidence of or eyewitnesses to the assault, the state's case depended on the credibility of the victim. The petitioner maintains that O'Brien's failure to object to the challenged statements improperly bolstered the credibility of the victim because, in effect, Puryear testified that the sexual assault, in fact, occurred. We are not persuaded.

At trial before the habeas court, O'Brien testified that his strategy was to attack the victim's credibility and, specifically, to discredit her testimony that the assault had occurred. Regarding the first challenged statement, O'Brien conceded that he could have objected to how the prosecutor phrased the question because the prosecutor failed to say "alleged." Regarding the second statement concerning the events following the volleyball game, he did not think at the time that it touched upon the ultimate issue. Rather, he thought that it reflected the basis of Puryear's opinion that the victim's

inability to move her legs for some time after the volley-ball game was evidence that she suffered from a conversion disorder.[5] O'Brien chose to address Puryear's testimony on cross-examination rather than to object and draw undue attention to the question and answer.

The habeas court found that O'Brien successfully "brought out inconsistencies between what the victim had said to the doctor and statements that she had made to others" and concluded that "this is a reasonable strategy, albeit unsuccessful in this particular situation." Similarly, this court noted during the petitioner's direct appeal from his conviction: "[t]he victim's testimony at trial contained several inconsistencies relative to her pretrial statements to other witnesses, the police and her medical providers. [This court then enumerated specific examples.] . . . As these examples demonstrate, [O'Brien] vigorously cross-examined the state's witnesses and challenged their credibility before the jury." *State* v. *Boyd*, supra, 89 Conn. App. 14–15.

Based on our review of the record, we conclude that the petitioner has not overcome the strong presumption that O'Brien's decision to cross-examine Puryear vigorously, rather than to object to the challenged statements, was anything other than a reasonable exercise of his professional judgment under the circumstances. Because the petitioner has failed to prove that O'Brien's performance was deficient, we do not address whether the petitioner was prejudiced by the claimed deficiencies.

II

The petitioner's second claim is that O'Brien rendered ineffective assistance because he failed to take photographs of the area of the building where the assault

[5] O'Brien testified as to his understanding of Puryear's testimony, which was that a conversion disorder or a conversion response happens when a victim converts psychological trauma into physical symptoms and that the victim's inability to move her legs was such a response.

took place and failed to undertake an independent investigation of the area. Instead, the only photographs of the area before the jury were submitted by the state. The petitioner claims that "[t]he lack of clarifying photographs of the entire area prevented the jury from considering in an informed and comprehensive way the level of traffic in the area" in which the assault occurred. We disagree.

"[A]lthough it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 583–84, 941 A.2d 248 (2008).

The record reveals the following additional facts. Although at trial O'Brien relied on the photographs of the crime scene that were submitted by the state, he supplemented them with additional testimony from the school's kitchen staff to establish the layout of the dining hall basement, including the pot room. He also presented staff time cards from the date of the assault, which indicated at what time each employee "punched out" and presumably left the premises, and established that these employees would have passed through the pot room on the way out. This evidence tended to support the defense theory that the assault could not have

occurred as the victim alleged, including that the duration of the assault as she reported to one medical professional was impossible, because the evidence tended to show that the area was subject to regular employee traffic on the night of the assault. In his closing argument, O'Brien described the area as "fifteen feet from an elevator where numerous employees are in and out, back and forth, up and down" and reminded the jury that these facts were inconsistent with the duration of the assault that the victim reported to one of the medical professionals who treated her.

The habeas court found that O'Brien was in a "precarious" and "unenviable" position as to what extent he should develop a trial strategy around the layout of the crime scene because the petitioner vehemently maintained that the victim's claims were fabricated and that he was not in the pot room that night. Our review of the record reveals that O'Brien presented to the jury other evidence of the layout of the basement, including the pot room, and that he presented evidence concerning employee traffic in the area on the night of the assault. In light of the other evidence he adduced at trial, we cannot conclude that O'Brien's failure to submit "clarifying" photographs of the crime scene fell below the standard of reasonable competence.

The judgment is affirmed.

In this opinion the other judges concurred.