# ERIC HAM *v.* COMMISSIONER OF CORRECTION
## (SC 18530)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued February 14—officially released July 26, 2011

*Glenn W. Falk*, special public defender, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda Howe*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

McLACHLAN, J. The petitioner, Eric Ham, appeals[1] from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly denied his petition for failure to establish that he was entitled to relief, regardless of his subsequent conviction and sentencing pursuant to a fair trial, where he had argued that his counsel's mistaken advice during the plea bargaining process led him to reject the state's favorable plea offer. The dispositive issue in this appeal is whether the mistaken advice concerning parole eligibility provided by counsel during plea negotiations, namely, that the peti-

---

[1] The petitioner filed this certified appeal from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-2 and General Statutes § 51-199 (c).

tioner would be eligible for parole after serving 85 percent of his sentence, not 50 percent, constitutes objectively deficient representation under the standard for assessing sixth amendment ineffective assistance of counsel claims established in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We conclude that it does not, and, accordingly, we affirm the habeas court's judgment.

The record reveals the following relevant facts, as found by the habeas court or otherwise undisputed, and procedural history. In 1993, the petitioner was charged with the following six crimes: (1) conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-124 (a) (1); (2) larceny in the third degree in violation of § 53a-124 (a) (1); (3) conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a); (4) murder in violation of § 53a-54a (a); (5) assault in the first degree in violation of General Statutes § 53a-59; and (6) falsely reporting an incident in violation of General Statutes (Rev. to 1993) § 53a-180 (a) (3) (A). The petitioner's counsel (counsel) had informed the petitioner that the potential maximum sentence for all six crimes was more than a life sentence. Counsel further advised him that, if he was convicted of murder, he would not be eligible for parole and would face a mandatory minimum sentence of twenty-five years to serve.

Shortly before trial, the state offered the petitioner a plea bargain in which he would plead guilty to manslaughter in exchange for a total effective sentence of twenty-seven years, execution suspended after seventeen years. Counsel informed the petitioner that, if he accepted the plea offer, he would be eligible for parole after serving 85 percent of the seventeen year term, meaning that he would be eligible after serving approximately fourteen and one-half years. Counsel's advice was based on Public Acts 1995, No. 95-255, § 1 (P.A.

95-255), which became effective on July 1, 1996, and amended General Statutes (Rev. to 1995) § 54-125a by increasing from 50 percent to 85 percent the portion of a sentence that certain violent offenders must serve before becoming eligible for parole.[2] When counsel advised the petitioner, his advice was consistent with the interpretation of P.A. 95-255, § 1, by the board of parole (board), namely, that P.A. 95-255, § 1, applied retroactively to those offenders who committed their offenses prior to the effective date of July 1, 1996.[3]

The petitioner rejected the offer, and proceeded to trial. After several days of trial, the state indicated to counsel that it would be willing to extend a new plea offer of approximately twelve to thirteen years imprisonment. Counsel notified the petitioner of the new offer, and advised him that he probably could obtain an offer of approximately ten years. The petitioner rejected counsel's attempts to secure any such offer and informed counsel that he would not accept any plea offer of more than five years. The jury returned a guilty verdict on all six charges, and in April, 1997, the court sentenced the petitioner to a total effective term of fifty years imprisonment. On appeal, the Appellate Court affirmed the trial court's judgment. *State* v. *Ham*, 55 Conn. App. 281, 739 A.2d 1268, cert. denied, 252 Conn. 916, 743 A.2d 1128 (1999).

Subsequently, in *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 808, 786 A.2d 1091 (2002), this

[2] Public Acts 95-255, § 1, added the following language, which is now codified at General Statutes § 54-125a (b), and provides in relevant part: "(2) A person convicted of . . . an offense . . . where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole . . . until such person has served not less than eighty-five per cent of the definite sentence imposed."

[3] Counsel later testified before the habeas court that he could not recall whether his advice was based on his own examination of P.A. 95-255, his review of the board's interpretation of P.A. 95-255, or a discussion he had had with another attorney.

court held that P.A. 95-255, § 1, applied prospectively only, meaning that, for crimes committed prior to the act's effective date of July 1, 1996, § 54-125a required that certain violent offenders serve 50 percent of the sentence imposed before becoming eligible for parole, rather than 85 percent. Our decision in *Johnson* thus clarified that, because the petitioner here had committed his crimes in 1993, if he had accepted a plea offer, he would have been eligible for parole after serving only 50 percent of the sentence, rather than 85 percent.

On July 25, 2005, the petitioner filed a petition for a writ of habeas corpus alleging that he had been denied effective assistance of counsel.[4] According to the petitioner, his counsel provided ineffective assistance by "inaccurate[ly]" advising him that, if he accepted the first plea offer, he would be eligible for parole only after serving 85 percent of the seventeen year term. The petitioner further maintained that, but for counsel's error, he would have accepted the second plea offer of only twelve to thirteen years. The petitioner requested that the court immediately release him from custody, vacate his judgment of conviction and remand the case back to the trial court for a new trial, and grant any other such relief, as law and equity may allow.[5]

[4] Although the petitioner raised several claims in his petition for writ of habeas corpus, he later abandoned all claims except the claim of ineffective assistance of counsel.

[5] The respondent, the commissioner of correction, contends that any remedy ordering the habeas court to dismiss the charges against the petitioner and instructing the state to reoffer a plea bargain to the petitioner would violate the separation of powers. Because we hold that the petitioner has not satisfied the first prong of the test set forth by the United States Supreme Court in *Strickland* v. *Washington*, supra, 466 U.S. 668, we need not address the respondent's contention. We note, however, that in January, 2011, the United States Supreme Court granted certiorari in *Missouri* v. *Frye*, 562 U.S. 1128, 131 S. Ct. 856, 178 L. Ed. 2d 622 (2011), and directed the parties to brief and argue the following question: "What remedy, if any, should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to constitutionally adequate procedures?" As of the date of the release of this opinion, oral argument for that appeal has not yet been scheduled.

On November 10, 2008, the habeas court denied the petition for a writ of habeas corpus and rendered judgment for the respondent, the commissioner of correction. The court determined that, even assuming that counsel's pretrial representation amounted to deficient performance, such performance did not affect the outcome of the petitioner's trial, and accordingly, he was not prejudiced, as required for ineffective assistance claims under *Strickland* v. *Washington*, supra, 466 U.S. 687. Additionally, the habeas court noted that counsel's "advice to the petitioner that he would be parole eligible at 85 [percent] was in accord with the . . . [board's] interpretation and application of P.A. 95-255, § 1. The [b]oard was interpreting [P.A. 95-255, § 1] to apply retroactively. It was not until early 2002, approximately five years after [counsel's] advice at issue, that the [Connecticut] Supreme Court in *Johnson* v. *Commissioner of Correction*, [supra, 258 Conn. 804], held that P.A. 95-255, § 1, only applied prospectively. This court would not conclude, given the foregoing, that [counsel's] advice regarding parole eligibility at 85 [percent] versus 50 [percent] would rise to the level of being deficient performance." This appeal followed.

The petitioner claims that the habeas court improperly denied his petition for a writ of habeas corpus for failure to establish a colorable claim of a violation of the right to effective assistance of counsel[6] on the basis of his claim that his counsel deficiently advised him during the plea bargaining process. The habeas court denied his petition because he was later convicted and sentenced following a fair trial. The petitioner argues

[6] The petitioner appears to predicate his claim of ineffective assistance of counsel on both the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. Because he has undertaken no independent analysis of his state constitutional claim, however, we address only his claim under the federal constitution. See, e.g., *State* v. *Melendez*, 291 Conn. 693, 704 n.16, 970 A.2d 64 (2009); *State* v. *Johnson*, 288 Conn. 236, 244 n.14, 951 A.2d 1257 (2008).

that a petition for a writ of habeas corpus should be granted when a petitioner demonstrates that his counsel provided deficient assistance during the plea bargaining process, regardless of whether such assistance deprived him of a fair trial. The respondent maintains that, although the right to effective assistance of counsel applies in plea negotiations, deficient assistance during such negotiations does not violate that right unless it affects the fairness of the trial. We need not decide, however, whether deficient assistance of counsel, resulting in a fair and reliable trial rather than a guilty plea, establishes a colorable claim of ineffective assistance of counsel.[7] Even assuming that it does, because we conclude that counsel's performance was not deficient, the petitioner has failed to establish a claim that counsel was ineffective for sixth amendment purposes. Thus, we affirm the habeas court's judgment.

"As enunciated in *Strickland* v. *Washington*, [supra, 466 U.S. 687] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by

[7] This issue is presently before the United States Supreme Court, which granted certiorari in *Lafler* v. *Cooper*, 562 U.S. 1127, 131 S. Ct. 856, 178 L. Ed. 2d 622 (2011), on the following question: "Is a state habeas petitioner entitled to relief where his counsel deficiently advises him to reject a favorable plea bargain but the defendant is later convicted and sentenced pursuant to a fair trial?" *Lafler* v. *Cooper*, United States Supreme Court, Docket No. 10-209 (January 7, 2011), available at http://www.supremecourt.gov/qp/10-00209qp.pdf (last visited July 12, 2011). The Supreme Court has extended the time for the respondent in *Lafler* to file his brief on the merits to July 15, 2011, and, as of the date of the release of this opinion, oral argument for that case has not yet been scheduled. Thus, if we decided the issue today, the United States Supreme Court's decision might impact the stability of our own decision in the present case. Because, however, the petitioner's claim would fail on other grounds even if we decided the issue presented in his favor, we need not resolve that question.

lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009). A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier. *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 832–33, 950 A.2d 1220 (2008).

In the present case, the petitioner claims that counsel's performance was not objectively reasonable because counsel "inaccurate[ly]" advised him that, if he accepted the first plea offer, he would be eligible for parole only after serving 85 percent of the seventeen year term, when, in fact, he would have been eligible for parole after serving only 50 percent of his sentence. The petitioner contends that " '[m]inimal research would have alerted counsel to the correct parole eligibility date.' " He further claims that he was materially prejudiced, and is therefore entitled to relief pursuant to *Strickland*.

The petitioner contends that the habeas court did not resolve the issue of whether counsel's performance was deficient. The respondent concedes that "[i]t is unclear whether the habeas court's decision resolved the deficient performance prong." The respondent further describes the language of the habeas court in its memorandum of decision as "intimating how it would rule under *Strickland* if [an appellate] court did not agree" with the habeas court that deficient assistance of counsel, resulting in a fair and reliable trial rather than a guilty plea, does not establish a colorable claim of ineffective assistance of counsel. We disagree and

conclude that the habeas court determined that counsel's performance was not deficient.

We acknowledge that, "[w]hen the record on appeal is devoid of factual findings by the habeas court as to the performance of counsel, it is improper for an appellate court to make its own factual findings." *Small v. Commissioner of Correction*, 286 Conn. 707, 716, 946 A.2d 1203, cert. denied sub nom. *Small v. Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). In the present case, although the habeas court did not ground its decision on an evaluation of counsel's performance, it did find that counsel's failure to advise the petitioner that he would be required to serve only 50 percent of his sentence did not constitute ineffective assistance of counsel. In other words, although the habeas court's determination on counsel's performance was not essential to its decision, it, nonetheless, was a specific, conclusive judicial determination on the issue supported by the evidence in the record. The habeas court did not simply make its statement in passing; it could have declined to analyze the issue of counsel's performance at all. We, therefore, regard it as having the force of an adjudication. In addition to the habeas court's express statement, albeit in dicta, that counsel's performance was not deficient, we base our conclusion on the habeas court's specific finding that counsel's advice was in accord with the board's interpretation of P.A. 95-255, § 1, an interpretation that remained the only authority on the issue until five years later, when this court interpreted P.A. 95-255, § 1, in *Johnson v. Commissioner of Correction*, supra, 258 Conn. 808, to have prospective effect only. Based on this record, we conclude that the habeas court resolved the issue of whether counsel's performance was deficient.

Because the habeas court concluded that counsel's performance was not deficient, we now review whether that decision was legally and logically correct. The stan-

dard of appellate review of a habeas corpus proceeding is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review; *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991); "[w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . [J]udicial scrutiny of counsel's performance must be highly deferential. . . . [Moreover], a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." (Internal quotation marks omitted.) *Carpenter* v. *Commissioner of Correction*, 290 Conn. 107, 118, 961 A.2d 403 (2009).

As the habeas court noted, counsel's advice to the petitioner that he would be parole eligible after serving 85 percent of his sentence was consistent with the board's interpretation and application of P.A. 95-255, § 1, at that time.[8] "[Under the board's interpretation of

---

[8] Although counsel testified before the habeas court that he could not recall the authority upon which he based his advice; see footnote 3 of this opinion; because the performance inquiry is an objective one, the basis for his advice is immaterial.

P.A. 95-255, § 1, an] inmate's date of sentencing, and not the date of his or her crime, [controlled whether the new standard applied to an inmate]." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* supra, 258 Conn. 811. At the time that counsel advised the petitioner, no court in this state had held otherwise. Thus, a reasonable practitioner would have concluded that P.A. 95-255, § 1, applied retroactively. Moreover, even if counsel had believed that P.A. 95-255, § 1, applied prospectively only, counsel would have had to advise the petitioner that, if he accepted a plea offer, barring an unexpected reversal in interpretation by the board or an inmate's successful petition before a habeas court, he would be required to serve 85 percent of his sentence before he could become eligible for parole.

Furthermore, a revisitation of our analysis in *Johnson* makes it even more clear that counsel's advice was not unreasonable. In *Johnson,* we announced that P.A. 95-255, § 1, applied prospectively only, meaning that, for crimes committed prior to the act's effective date of July 1, 1996, § 54-125a required that certain violent offenders serve 50 percent of their sentence before becoming eligible for parole, rather than 85 percent. See id., 808. In so concluding, we "[did] not perceive the language [of § 54-125a (b) (2)] as a clear and unequivocal statement by the legislature that P.A. 95-255, § 1, applies *retroactively* to persons convicted on or after the date on which the law became effective for offenses committed prior to that date." (Emphasis in original.) Id., 822. Indeed, it was the absence of clear and unambiguous statutory language that led us to conclude that the legislature intended P.A. 95-255, § 1, to apply prospectively. Id. In addition, the legislative history revealed that "at least one representative believed that the legislation would be applied retrospectively. Specifically, Representative [Michael P.] Lawlor stated during the floor

debate on the proposed legislation in the House of Representatives that it does not wait five or six years to have an effect. This bill will also [a]ffect all of the people currently incarcerated in Connecticut's prisons." (Internal quotation marks omitted.) Id., 827. It was only in "the absence of any clear statutory language to support this interpretation of the legislation . . . and in light of other pertinent legislative history . . . [that] Representative Lawlor's comments [were] insufficient to overcome the strong presumption against retroactivity." Id., 827–28. As demonstrated by our analysis in *Johnson*, an interpretation that P.A. 95-255, § 1, applied retroactively was not unreasonable; rather, it was a reasonable misinterpretation. We conclude that counsel's performance was not deficient, and, accordingly, we hold that the habeas court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other justices concurred.