VINCENT J. GRIFFIN *v.* COMMISSIONER
OF CORRECTION
(AC 33429)

Robinson, Alvord and Mihalakos, Js.

Argued May 30—officially released August 7, 2012

*Wayne A. Francis*, special public defender, for the appellant (petitioner).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (respondent).

### Opinion

MIHALAKOS, J. The petitioner, Vincent J. Griffin, appeals following the habeas court's granting of his petition for certification to appeal from its judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly rejected his claims of ineffective assistance of trial counsel. Specifically, he asserts that his trial counsel, attorney Leonard Caine, rendered ineffective assistance because he: (1) failed to object to inadmissible hearsay testimony offered by two of the state's witnesses; (2) entered the victim's written statement to police into evidence; and (3) failed to request a jury instruction that the state must prove beyond a reasonable doubt that the victim's conduct would not have justified a reasonable belief that she had consented to sexual contact with the petitioner.[1] For the reasons set forth herein, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's claims. After a jury trial, the petitioner was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). The petitioner was sentenced to a total effective term of twenty years incarceration, execution suspended after fourteen years, followed by twenty years of probation. See *State* v. *Griffin*, 97 Conn.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

App. 169, 172–73, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006).

The petitioner's conviction was the subject of a direct appeal before this court. See id., 169. In affirming the petitioner's conviction, this court concluded that the jury reasonably could have found the following facts regarding the assault. On October 5, 2002, the petitioner entered the victim's house without her knowledge after following her home from events associated with their high school reunion. Id., 170–71. Once inside the house, "[the victim] went into the kitchen and offered the [petitioner] a glass of water. The [petitioner] grabbed her with both hands and started kissing her. She was able to push him away and walked quickly into the living room toward the front door, but he followed her and began to kiss her again. He pulled her onto the living room couch and continued to kiss her. The [petitioner] lifted [the victim's] skirt and removed her undergarments, and [the victim] could feel him begin to perform cunnilingus on her. She was able to push him off and fell to the floor, where she pulled her undergarments back on. [The victim] started to walk toward the front door again, and the [petitioner] grabbed her and pulled her into the bedroom, where he threw her on the bed, kissed her and again removed her undergarments. [The victim] was able to wrest herself away and pull up her undergarments, and she ran down the hallway to open the front door. The [petitioner] pulled [the victim] back onto the couch, and he removed her undergarments yet again. She continued to plead with him to stop and told him to go home to his wife, to which he answered, 'I don't give an F'n crap about my wife.' The [petitioner] exposed his penis and attempted to insert it into her vagina, but, because her vagina was too dry, he spit on his hand, rubbed the spit on his penis and successfully inserted it. The [petitioner] laid back on the couch after ejaculating inside her, and [the victim] collected her

undergarments and ran into the bathroom. She could feel his semen coming out of her and cleaned herself. When she emerged, the [petitioner] was dressed and standing by the front door. When asked if he could call her, she told him he never could. After he left, she locked the door." Id., 171–72. The victim went to a hospital to have a rape test performed on Monday, October 7, 2002; she told some friends of the incident during the week and formally reported the incident to the police the following Monday. Id., 172.

During his criminal trial, the petitioner admitted that he and the victim engaged in consensual sexual contact, but he maintained that there was no sexual intercourse. Id., 172–73. As this court noted on direct appeal, the petitioner testified at trial that the victim "invited him into her house for a drink, and, while they were in the kitchen, she leaned into him and they embraced and kissed." Id., 186. He further asserted that "she was on top of him and was rubbing her body against his," and "that they attempted to engage in sexual intercourse, but because his penis was too soft, she stimulated him manually until he ejaculated." Id.

On November 8, 2006, the petitioner filed his petition for a writ of habeas corpus, which he amended on December 23, 2009, and again on March 25, 2010. The petitioner's second amended petition alleges that he did not receive effective assistance of trial counsel in violation of the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The habeas trial was held on May 12, 2010. During that proceeding, the court heard testimony from Caine regarding his representation of the petitioner. On April 11, 2011, the habeas court issued a memorandum of decision denying the petitioner's petition, finding that the petitioner failed to prove that he was denied the effective assistance of trial counsel under the two-pronged test set forth in

*Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The habeas court granted the petitioner's petition for certification to appeal. This appeal followed on May 4, 2011. Additional facts and procedural history will be introduced as necessary.

We first set forth the standard of review and legal principles applicable to the petitioner's appeal. "Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 706, 23 A.3d 682 (2011).

A claim of ineffective assistance of counsel as enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 668, "consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 294–95, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). Our Supreme Court has stated that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances," and that "[j]udicial scrutiny of counsel's performance must be highly deferential." (Internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 706.

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 295. A petitioner's claim will "succeed only if both prongs are satisfied. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable." (Citation omitted; internal quotation marks omitted.) Id. "A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.[2]

I

The petitioner's first two claims relate to allegedly deficient trial strategy employed by Caine. Specifically, he asserts that Caine improperly (1) failed to object to hearsay testimony provided by Officer Rebecca Wisnie and Detective Anthony Rickevicius; and (2) submitted the victim's out-of-court, written statement to Rickevicius into evidence.

The following additional facts are relevant to these claims. During the state's case-in-chief at the petitioner's criminal trial, the state called Wisnie and Rickevicius and questioned them about what the victim told them regarding the sexual assault. Among other testimony, Wisnie stated that the victim told her that the petitioner "forced her underpants off and forced her to have intercourse, sexual intercourse with him," and that "he ejaculated by masturbation." Likewise, Rickevicius testified, inter alia, that the victim "said she was sexually assaulted by [the petitioner]," and that there was

[2] As discussed in further detail herein, the habeas court found against the petitioner on both the performance prong and the prejudice prong on each of his ineffective assistance claims.

vaginal penetration by the petitioner's penis. Rickevicius further stated that the victim told him that the petitioner ejaculated into her, and that she could feel his semen coming out of her vagina. Although neither party disputes that this testimony constituted inadmissible hearsay, Caine never objected to the testimony on hearsay grounds. In fact, on cross-examination, Caine also elicited details from Wisnie and Rickevicius regarding what the victim told them about the assault.

During his cross-examination of Rickevicius, Caine also introduced into evidence a written statement given to Rickevicius by the victim. In the statement, the victim indicated, inter alia, that the petitioner "attempted to do oral sex on [her] and [she] pushed him off." She also stated that the petitioner "tried to get his penis in [her] but couldn't," and that he "masturbated over [her] until he ejaculated on the couch."

The petitioner contends that Caine's decisions not to object to the hearsay testimony and to admit the victim's statement served no other purpose than to "bolster" the state's case at trial, which he claims "prejudiced [him] tremendously." At the habeas trial, Caine testified that he could not recall the testimony of Wisnie or Rickevicius, or exactly why he did not object to it,[3] but that he does not object to every objectionable question because he does not want the jury to view him as an obstructionist. He further indicated that his trial strategy was to highlight the inconsistencies between the victim's testimony and her statements to the police, to undermine her credibility and to raise reasonable doubt as to the petitioner's guilt. Specifically, with respect to his decision to introduce the victim's written statement to Rickevicius, Caine explained: "There [were] such inconsistencies in there that I wanted a jury, and this

[3] The habeas trial occurred approximately six years after the petitioner's criminal trial.

is the trial strategy, to at least have something in there other than what they heard in the courtroom to look at, and the theory here was, there were so many inconsistencies that the jury would not believe what she said and therefore couldn't convict [the petitioner]."

The habeas court found that "[t]here were numerous inconsistencies between the victim's testimony and her statements to the police," including that "she did not tell either Wisnie or Rickevicius that the petitioner dragged her down the hallway and attempted to assault her in the bedroom." Furthermore, the victim's written statement to Rickevicius indicated that the petitioner "attempted to do oral sex on [her]," "tried to get his penis in [her] but couldn't," and "masturbated over [her] until he ejaculated on the couch"—but "did not clearly indicate that the petitioner actually performed cunnilingus on her or that he actually had vaginal intercourse with her."[4]

The habeas court concluded that Caine did not render ineffective assistance, finding that his use of the victim's statement and his decision not to object to the testimony of Wisnie and Rickevicius supported his trial strategy of "emphasizing the inconsistencies between her testimony and her statements to the police and medical staff, and by demonstrating that there was reasonable doubt as to whether the petitioner and the victim actually engaged in sexual intercourse." The court also held that the petitioner had not proven any resulting prejudice from Caine's challenged conduct because "it is more likely than not that the state would

---

[4] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse [defined in pertinent part in General Statutes § 53a-65 (2) as 'vaginal intercourse . . . or cunnilingus'] by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury to such person . . . ."

have met its burden of proof even without" the victim's written statement and the hearsay testimony.

Based on our review of the record, we agree with the habeas court that Caine did not render ineffective assistance. "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Servello* v. *Commissioner of Correction*, 95 Conn. App. 753, 761, 899 A.2d 636, cert. denied, 280 Conn. 904, 907 A.2d 91 (2006). The petitioner cannot overcome this strong presumption of reasonableness here. Caine's decision not to object to the officers' testimony allowed the jury to hear the inconsistencies between the victim's testimony in court and her prior statements to the officers, in furtherance of Caine's focus on undermining the victim's credibility and raising reasonable doubt regarding the petitioner's guilt. "[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency." (Internal quotation marks omitted.) Id. Similarly, Caine's decision to admit the victim's written statement into evidence also highlighted the differences between the victim's testimony at trial and her prior recounting of the incident to Rickevicius. Because we conclude that Caine's performance fell in the acceptable range of competence for criminal defense counsel, we reject the petitioner's first two claims of ineffective assistance. See *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 295.[5]

[5] Because we have determined that the petitioner has not met his burden on the "performance prong," we need not analyze whether the petitioner was prejudiced by Caine's alleged deficiencies. See, e.g., *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704. Even if we assume that Caine's performance was constitutionally deficient, however, we agree with the habeas court that the petitioner suffered no prejudice as a result of Caine's allegedly deficient performance. The record demonstrates that the state presented testimony from the victim, the nurse who assisted in administering the rape test on the victim, forensic laboratory employees and two constancy of accusation witnesses. The jury also received forensic evidence regarding

## II

The petitioner next claims that Caine rendered ineffective assistance because he failed to request a jury instruction that the state must prove beyond a reasonable doubt that the victim's conduct would not have justified a reasonable belief that she had consented. We are not persuaded.

The following additional facts are relevant to this claim. At the petitioner's criminal trial, Caine requested the following jury instruction on consent: "The actual consent of the victim to sexual intercourse will negate the element of compulsion by threat of force. The consent required, however, must be actual and real, and not just mere surface acquiescence induced by fear or shock. In order for consent to sexual intercourse to negate the element of compulsion, the intercourse must be engaged in by the other person with no compulsion,

the presence of the petitioner's DNA in the sperm rich fractions of the victim's vaginal swabs and a stain on her couch cushion. In the face of this additional evidence beyond the victim's written statement and the testimony of Wisnie and Rickevicius, it cannot be said that there is a "reasonable probability that . . . the result of the proceeding would have been different"; (internal quotation marks omitted) *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 295; if Caine had not introduced the victim's statement into evidence or if he had objected to the hearsay testimony. Furthermore, to the extent that the petitioner argues that he was prejudiced by the officers' "substantive evidence" that was offered to "[corroborate] the testimony of other witnesses," we do not agree. As noted previously, the officers' testimony did not unequivocally corroborate the other testimony offered at trial; rather, it contained numerous inconsistencies highlighted by Caine. The trial court instructed the jury that evidence of the victim's inconsistent out-of-court statements should be considered not as substantive evidence of the truth of the statements, but rather "as evidence of conduct inconsistent with the testimony on the [witness] stand" to be used in evaluating the credibility of the victim's testimony. We are also unconvinced by the petitioner's argument that he was prejudiced by the "emotional impact" of the officers' testimony about the victim's appearance when she spoke to them regarding the assault. "Demeanor" evidence is not hearsay, and Caine could not have successfully objected to this testimony on hearsay grounds. See *State* v. *Burney*, 288 Conn. 548, 560–61, 954 A.2d 793 (2008).

no threat, no fear. In other words, it must be a truly voluntary and willing act of sexual intercourse. Consent may be express or it may be implied from all the circumstances then and there existing. Whether or not [the victim] consented to the sexual intercourse is a question of fact which you must determine from all the circumstances which have been proven to you."[6]

The petitioner asserts that Caine should have requested a consent instruction pursuant to *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989) ("*Smith* instruction"), that "the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that the victim had consented," and he contends that Caine's failure to do so constituted ineffective assistance. The petitioner further argues that he was prejudiced by Caine's performance because "[t]he jury was not instructed as to the appropriate standard in weighing the evidence relating to consent. This omission may have reasonably confused or misled the jury as to how to weigh the evidence, and, therefore, the petitioner was denied his right to a fair trial."

At the habeas trial, Caine testified that he chose not to request a *Smith* instruction because, after reviewing Connecticut model criminal jury instructions relevant

---

[6] The trial court instructed similarly: "If you find that the victim consented to the act of sexual intercourse, you cannot find that the act was compelled by the use of force or the threat of use of . . . force. Such consent must have been actual, and not simply acquiescence brought about by force, or by fear, or by shock. In order for consent to sexual intercourse to negate the element of compulsion, the intercourse must be engaged in by the other person with no compulsion, no threat, no fear, and no force. The act must have been truly voluntary on the part of the complainant. You may find that the consent was expressed or you may find that it's implied from the circumstances that you find existed. Whether there was consent is a question of fact for you to determine." This court rejected the petitioner's challenge to this jury instruction on direct appeal, stating that the trial court "instructed the jury appropriately as to consent . . . ." *State* v. *Griffin*, supra, 97 Conn. App. 187.

to sexual assault cases, he believed that "the evidence didn't justify that instruction." The habeas court agreed with Caine. Specifically, the court noted that at trial, "there was never any suggestion made to the jury that the petitioner reasonably interpreted ambiguous conduct by the victim to indicate her consent. Rather, the theory of defense was that the victim had fabricated her testimony about being forced by the petitioner to engage in sexual acts and that she had actually initiated the acts, which notably did not include sexual intercourse. . . . The reasonableness of the petitioner's belief that the victim had consented was simply not an issue in the case." The court further stated that even if Caine had requested a *Smith* instruction, "it is not likely that the trial court would have given the instruction" because of the lack of evidence justifying the charge, and, further, because it is questionable whether such a consent instruction would be mandatory.

The habeas court also found that the petitioner failed to demonstrate prejudice resulting from Caine's failure to request the *Smith* instruction because there was no reasonable probability that the result of the proceeding would have been different if the instruction had been given. The court rejected the petitioner's argument that the victim purportedly said she felt compelled to engage in intercourse only because of the petitioner's physical size, noting the victim's testimony that "she told the petitioner to stop and go home on several occasions and that she tried to push him away . . . [and] that he grabbed her and dragged her down the hallway into the bedroom and that after she was able to get away from him and run to the front door, he grabbed her again with even more force and pushed her down onto the couch, where he sexually assaulted her."

We agree that Caine's failure to request a *Smith* instruction did not constitute ineffective assistance of counsel. In *Smith*, our Supreme Court stated:

"[W]hether a complainant has consented to intercourse depends upon her manifestations of such consent as reasonably construed. If the conduct of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal. It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented." *State* v. *Smith*, supra, 210 Conn. 140–41.

Our Supreme Court has indicated that a *Smith* instruction may be appropriate where there is a "suggestion made to the jury that it should acquit the defendant because he reasonably interpreted ambiguous conduct by the complainant to indicate her consent." *State* v. *Jeffrey*, 220 Conn. 698, 719, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); see also *State* v. *Kulmac*, 230 Conn. 43, 76, 644 A.2d 887 (1994) ("The defendant's reliance on *Smith* . . . is misplaced. In *Smith*, the defendant claimed that the victim's conduct was ambiguous as to whether she

consented to the intercourse. In this case, the defendant made no such claim."). Even where a defendant raises the defense of the victim's ambiguous conduct, however, this court has stated that neither *Smith* nor *Jeffrey* indicates "that such a charge would be mandatory if properly requested . . . ." *State* v. *Cotton*, 77 Conn. App. 749, 758, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003).

Here, the petitioner never argued that he interpreted ambiguous conduct by the victim as her consent to sexual intercourse.[7] Rather, he testified that he and the victim engaged in consensual sexual contact, including kissing and masturbation, and that they attempted to engage in consensual sexual intercourse but were unable to do so. The victim, in turn, testified that she did not say or do anything that would have led the petitioner to believe that she wanted to have sex with him, but the petitioner forced himself on her and had intercourse with her against her will. This situation is not the ambiguous circumstance contemplated by *Smith* and *Jeffrey*, and a *Smith* instruction was not warranted here. See *State* v. *Jeffrey*, supra, 220 Conn. 718–19; see also *State* v. *Kulmac*, supra, 230 Conn. 76.[8] Moreover, requesting a *Smith* instruction here may have undercut the petitioner's theory of the case at trial by injecting the notion of the victim's ambiguity toward sexual intercourse into his otherwise straightforward defense that the victim plainly had consented to, and

---

[7] Indeed, at the habeas trial, Caine agreed with the statement by counsel for the respondent, the commissioner of correction, that if the jury believed the petitioner's version of events, "there was no ambiguity as to whether or not the victim was consenting . . . ."

[8] The mere fact that the petitioner raised a consent defense at trial is insufficient to require a *Smith* instruction. "[O]ur Supreme Court has not held that such an instruction is constitutionally mandated whenever the defense of consent is raised in sexual assault cases." *State* v. *Blango*, 103 Conn. App. 100, 118, 927 A.2d 964, cert. denied, 284 Conn. 919, 933 A.2d 721 (2007).

even initiated, sexual contact. Because Caine's failure to request a *Smith* instruction was "reasonable considering all the circumstances" of the evidence and arguments presented at trial, his performance was not deficient. (Internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 706. We therefore reject the petitioner's third ineffective assistance claim.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Because we have concluded that Caine's failure to request a *Smith* instruction did not constitute deficient performance, we need not analyze the petitioner's claims of prejudice. See, e.g., *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704. We agree with the habeas court, however, that there is not a reasonable probability that the petitioner would have been acquitted had Caine requested a *Smith* instruction, and, thus, that the petitioner was not prejudiced by Caine's failure to request the desired charge. A *Smith* instruction is not mandatory, and there is no guarantee that the trial court would have given such an instruction even if Caine had requested it. See *State* v. *Cotton*, supra, 77 Conn. App. 758. Furthermore, the trial court instructed the jury, inter alia, (1) that "[t]he state must prove beyond a reasonable doubt that the [petitioner] compelled the complainant to engage in sexual intercourse by the use of force . . . or by the threat of the use of force against her," and (2) that express or implied consent by the victim would negate the element of compulsion. Under these instructions as given, in order to find the petitioner guilty, the jury must have been convinced beyond a reasonable doubt that the victim did not consent to sexual intercourse. Having found the petitioner guilty, there is no reasonable probability that the jury would view the same evidence of the victim's conduct as justifying a reasonable belief that she had consented to intercourse—and, thus, there is no reasonable probability that the outcome at trial would have been different had the jury received a *Smith* instruction.