JEFFREY GIBSON *v.* COMMISSIONER
OF CORRECTION
(AC 32299)

Robinson, Espinosa and Peters, Js.

---

140

Argued November 28, 2011—officially released May 1, 2012

*Damon A. R. Kirschbaum,* for the appellant (petitioner).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David Clifton,* deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

ESPINOSA, J. The petitioner, Jeffrey Gibson, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion in denying the petition for certification to appeal, claiming that (1) the court improperly excluded testimony concerning a confidential informant and failed to conduct an in camera review of records concerning the informant, (2) the court improperly excluded from the evidence a police report, (3) his due process right to a fair trial was violated when, during his criminal trial, the prosecutor failed to disclose material evidence that was favorable to the defense and (4) his counsel, during a prior habeas proceeding, rendered ineffective assistance. We conclude that the court did not abuse its discretion in denying certification to appeal and, therefore, dismiss the appeal.

The following procedural history underlies the present appeal. In 1997, the petitioner was convicted of the crimes of murder and carrying a pistol or revolver without a permit. At the petitioner's criminal trial, Kathryn Hutchings testified on behalf of the state as an eyewitness to the shooting incident underlying the petitioner's convictions. She testified that the petitioner

was the initial aggressor in the shooting death of the victim. The petitioner was sentenced to a total effective term of incarceration of forty-five years. Following the petitioner's direct appeal, this court affirmed the judgment of conviction. *State* v. *Gibson*, 56 Conn. App. 154, 742 A.2d 397 (1999). In 2003, in a prior habeas proceeding, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that his trial counsel, special public defender Donald Dakers, provided ineffective assistance. The habeas court denied the petition and this court dismissed the petitioner's appeal from that judgment. *Gibson* v. *Commissioner of Correction*, 98 Conn. App. 311, 908 A.2d 1110 (2006), cert. denied, 281 Conn. 908, 916 A.2d 49 (2007).

In November, 2009, in the present habeas proceeding, the petitioner filed a second amended petition for a writ of habeas corpus in which he claimed that: (1) at his criminal trial, the state improperly failed to disclose material evidence that was favorable to the defense in violation of his due process right to a fair trial under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), (2) his trial counsel, Dakers, rendered ineffective assistance and (3) his counsel in the prior habeas proceeding, Robert J. McKay, rendered ineffective assistance in that he failed to raise the claim that the state improperly failed to disclose material evidence at his criminal trial. The court dismissed the second count of the petition on the ground of res judicata, relying on the fact that, in his prior habeas petition, the petitioner raised an ineffective assistance of counsel claim concerning Dakers. Following an evidentiary hearing, the court, in a thorough memorandum of decision, rejected on their merits the remaining counts of the petition. The court concluded that the *Brady* claim lacked merit and, for that reason, the petitioner was unable to demonstrate that he was prejudiced as a result of McKay's failure to pursue the *Brady* claim in the

prior habeas petition. The court denied the petitioner's petition for certification to appeal from its decision. This appeal followed.

In an attempt to discourage frivolous appeals; see *Henderson* v. *Commissioner of Correction,* 129 Conn. App. 188, 191, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011); our legislature enacted General Statutes § 52-470 (b), which provides that a petitioner may not appeal from an adverse judgment in a habeas proceeding unless the habeas court certifies that one or more questions ought to be considered by a reviewing court. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden,* 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and the applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citation omitted; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction,* 128 Conn. App. 425, 428–29, 17 A.3d 1089,

cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011). Having set forth the principles guiding our analysis, we turn to the claims set forth by the petitioner.

I

First, the petitioner claims that, during the present habeas proceeding, the court improperly excluded testimony concerning a confidential informant and failed to conduct an in camera review of records concerning the informant. The petitioner presented evidence that, prior to the shooting incident underlying the petitioner's arrest, Hutchings was a paid confidential informant in illegal drug cases for the New Haven police department. It was not disputed that the state did not disclose this information to the petitioner at the time of the criminal trial. During the petitioner's criminal trial, Hutchings testified on the state's behalf as an eyewitness, but there was no evidence presented at the criminal trial or in the present habeas trial that, in connection with the petitioner's case, Hutchings had provided information to the police or testified for the state as an informant.

At the habeas trial, the petitioner called New Haven police department record keeper Roger Young. Young, in accordance with a subpoena, brought confidential police records to court that included information about Hutchings' role as an informant in several criminal cases, all of which were unrelated to the petitioner's case. The respondent, the commissioner of correction, objected to the disclosure of any information from these records on the ground that they were privileged records relating to a confidential informant; see *Roviaro* v. *United States*, 353 U.S. 53, 59–62, 77 S. Ct. 623, 1 L. Ed 2d 639 (1957) (defining nature and scope of informer's privilege and establishing test for assessing challenges to privilege); and on the ground that the records were irrelevant to the present case.

The petitioner argued that the information concerning Hutchings' role as a confidential informant in other cases was relevant because it tended to prove his claim that the state failed to disclose information that would have been useful to the petitioner in confronting Hutchings at his criminal trial. Beyond stating that the evidence was necessary to confront the witness at trial, the petitioner did not elaborate with regard to the issue of relevancy. The court sustained the respondent's objection. The court reasoned that it already had before it ample evidence from police witnesses that Hutchings was a confidential informant. The court expressed its intent to protect the confidentiality of the records at issue absent a sufficient showing that they should be disclosed. Nonetheless, it based its decision to limit the petitioner's inquiry on the fact that the information sought by the petitioner was not relevant to the present case. As the court explained: "[F]urther details of whatever participation [Hutchings] may have had with the New Haven police department [are] not relevant to the [de]termination of this case. It matters not whether she was a confidential informant in one case or in a hundred cases. It matters not whether she provided useful information in several prosecutions or nonuseful information." On this ground, the court precluded inquiry by the petitioner into any further details concerning Hutchings' status as a confidential informant, such as information about when she first was registered as an informant, the first time she was paid as an informant, how much she was paid, how many times she was paid and which officers paid her.

Thereafter, the petitioner requested that the court conduct an in camera review of the subpoenaed records, which comprised fourteen banker's boxes. The petitioner argued that such a review was warranted to uncover information about Hutchings that would have been "material to the defense, material to the case,"

yet had not been disclosed by the state. The petitioner argued that the information sought was related to Hutchings' status as a confidential informant, such as when she began to act as an informant, how much she was paid in connection with her role as informant and which officers paid her for information. The court denied the request because it determined that the information sought was immaterial, but it ordered the police department not to destroy the records at issue for at least ninety days after the conclusion of court proceedings in this case.

The petitioner challenges these rulings by arguing, as he did at trial, that Hutchings' status as a confidential informant in other cases was relevant to proving that a *Brady* violation had occurred, as alleged in his petition for a writ of habeas corpus. "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Citation omitted; internal quotation marks omitted.) *State* v. *Stephenson*, 131 Conn. App. 510, 527–28, 27 A.3d 41 (2011).

As the court observed, at the time of its ruling, the petitioner had presented ample evidence that Hutchings had been a confidential informant for the New Haven police department in illegal drug cases. Hutchings' identity as an informant was integral to the petitioner's claim

that the state, at the criminal trial, improperly failed to disclose this information and that McKay improperly failed to pursue a *Brady* claim at the first habeas proceeding. At the time of the court's ruling, however, the petitioner's attorney made clear that the petitioner did not allege that Hutchings was a confidential informant in the petitioner's criminal case or that there was any evidence in the record to support such a contention. Rather, as stated previously, the petitioner argued only in general terms that the evidence at issue was relevant because Hutchings' role as a confidential informant in other cases, unrelated to that of the petitioner, would have been useful in confronting Hutchings at the criminal trial and, thus, would have helped to prove that a *Brady* violation occurred.

We readily conclude, as did the habeas court, that the evidence at issue was not relevant to any issue before the habeas court. The petitioner had a right to present evidence that supported his claim that undisclosed information about Hutchings prejudiced his defense. "To establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material." *State* v. *Esposito*, 235 Conn. 802, 813, 670 A.2d 301 (1996). The court excluded inquiry related to the records on the ground of relevancy, and we review its ruling in light of the ground of admissibility articulated by the petitioner at the time of the ruling. See, e.g., *State* v. *Mungroo*, 104 Conn. App. 668, 680 n.1, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

Although impeachment evidence, like exculpatory evidence, falls within *Brady*'s ambit; *State* v. *Esposito*, supra, 235 Conn. 813–14; the petitioner did not demonstrate before the habeas court that the evidence had probative value in that it would have been useful to confront Hutchings. On this record, we do not conclude

that the excluded inquiry likely would have yielded evidence that was either favorable or material to the claims before the court. Accordingly, we conclude that the court properly sustained the respondent's objection.

For similar reasons, we reject the claim that the court improperly failed to conduct an in camera review of the police department records. The petitioner, at the habeas trial, argued that the records at issue were relevant to demonstrate that he was unable to fully confront Hutchings at his criminal trial. Addressing the tension between a defendant's right to confront adverse witnesses and the need to uphold the confidentiality of privileged records, our Supreme Court, in *State* v. *Esposito*, 192 Conn. 166, 179–80, 471 A.2d 949 (1984), set forth a procedure for the disclosure of confidential records for the purpose of revealing impeaching information. The court held that a defendant seeking to compel an in camera inspection of privileged records "must [make] a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation . . . ." Id., 179. "To meet this burden, the defendant must do more than assert that the privileged records may contain information that would be useful for the purposes of impeaching a witness' credibility. . . . [T]he defendant's offer of proof should be specific and should set forth the issue in the case to which the [confidential] information sought will relate." (Citations omitted; internal quotation marks omitted.) *State* v. *McClelland*, 113 Conn. App. 142, 160–61, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). If an in camera review of the records is permitted and is appropriate, it lies within the court's discretion to determine whether the record contains relevant material that, in the interest of the defendant's constitutional right to confront his accusers, must be disclosed. *State* v. *Esposito*, supra, 180.

Insofar as the petitioner's claim is rooted in the constitutional guarantee of due process, we observe that, "to compel an in camera review under the due process clause, the defendant must at least make some plausible statement of how the information [sought to be disclosed] would be both material and favorable to his defense. . . . [F]avorable evidence is that evidence which . . . might have led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist. . . . On the other hand, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quotation marks omitted.) *State* v. *McClelland,* supra, 113 Conn. App. 163. A mere suspicion that there might be something exculpatory in privileged records does not sufficiently justify an in camera inspection. Id., 164.

"We review the court's conclusion that the defendant was not entitled to an in camera review of the confidential documents pursuant to our standard of review for the court's evidentiary rulings. . . . The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Smith,* 94 Conn. App. 188, 195, 891 A.2d 974, cert. denied, 278 Conn. 906, 897 A.2d 100 (2006).

At the time he requested an in camera review by the habeas court, the petitioner's attorney stated that he had "a reasonable basis to believe that there are records, confidential informant records, that show when Kathryn Hutchings became a confidential informant, when she was paid, how much she was paid [and] the police officers that she was paid by." The

petitioner's attorney stated: "[T]here is a reasonable basis to believe that there's information in these records, confidential informant records, that's material to the petitioner's claim. There's information that would have been material to the confrontation [and] cross-examination of Kathryn Hutchings at the criminal trial." The court, concluding that the information sought by means of an in camera review was "immaterial," denied the request.

We carefully have reviewed what the petitioner's attorney conveyed to the court in support of his request for an in camera review of the privileged records. The petitioner's attorney stated with specificity the type of information about Hutchings that was the subject of his request. As set forth previously, this information related to Hutchings' activities as a confidential informant in unrelated criminal cases. Before the habeas court, the petitioner bore the burden of demonstrating why an in camera review would have yielded evidence relevant to his *Brady* claim. The petitioner argued, in general terms, that he believed such review would have yielded information that would have been helpful to the defense in its "confrontation" and "cross-examination" of Hutchings at the criminal trial. Assuming that the specific information sought appeared in the records, we, as did the habeas court, conclude that the petitioner did not make a showing that the information would have been useful in impeaching Hutchings or that it would have been material evidence for the defense. For these reasons, the petitioner has failed to demonstrate that the court's refusal to conduct an in camera review reflected an abuse of discretion or that an injustice occurred.

II

Next, the petitioner claims that the habeas court improperly excluded from the evidence a police report

concerning Hutchings. At the habeas trial, the petitioner presented testimony from Salvatore Viglione, a retired New Haven police officer. Viglione testified that, while an officer, he had responded to a breach of the peace complaint against Hutchings. During his examination of Viglione, the petitioner's attorney asked Viglione to review his police report concerning that incident. The respondent objected to the admission of the report, primarily on the ground of relevance. The respondent argued that the report contained hearsay and that the report would not have been admissible for the purpose of impeaching Hutchings at the criminal trial and, thus, was irrelevant to the claims raised in the petition for a writ of habeas corpus.

The petitioner's attorney represented that the report described an incident in which the police responded to a complaint, at which time they encountered Hutchings, who was behaving in a violent and threatening manner. At the time, Hutchings stated to Viglione that she could not be arrested because she was a confidential informant. The petitioner's attorney argued: "It is our position that this document is relevant to this case because it . . . contains information that a witness . . . believes that she is a confidential informant, and her belief is something . . . that . . . should have been disclosed to the defense." The court sustained the respondent's objection on the ground that Hutchings' state of mind was irrelevant to the claims raised in the petition.

Part I of this opinion sets forth our standard of review for evidentiary matters. In his brief to this court, the petitioner argues that the ruling was improper because this information concerning Hutchings' state of mind, her belief that she was a confidential informant, "was favorable to the petitioner's defense because it shows

that Hutchings was biased in favor of the police. Importantly, the date of the report is after the shooting [underlying the petitioner's conviction], but before the petitioner's criminal trial."

Evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. The petitioner's attorney made clear that he sought the admission of the report not as proof that Hutchings was a confidential informant,[1] but as evidence of her state of mind. The petitioner, however, has not presented this court with any logical argument bolstered by relevant facts that Hutchings' state of mind at the time of this incident, apart from the ample evidence already before the court that Hutchings was a confidential informant, was favorable to the defense and thus relevant for impeachment purposes at his criminal trial. Consequently, he has not demonstrated that the excluded evidence was relevant to the claims in his petition. On this ground, we readily conclude that the court's ruling reflects a sound exercise of discretion.

### III

Next, the petitioner claims that the habeas court improperly concluded that he had not demonstrated that a *Brady* violation occurred in that the state during his criminal trial failed to disclose that Hutchings was a paid confidential informant.[2] As set forth previously,

---

[1] It bears reiterating that there was ample evidence presented at the habeas trial, including testimony from Hutchings, that Hutchings was a confidential informant for the New Haven police department.

[2] In the return to the petitioner's amended petition, the respondent pleaded that the petitioner had raised "a claim via his petition that could have been raised on direct appeal" and that he was procedurally defaulted from doing so under Practice Book § 23-30 (b). In his reply, the petitioner pleaded that the respondent did not sufficiently plead procedural default, no claim was procedurally defaulted and that any procedural default was cured by a showing of cause and prejudice. The habeas court did not address the issue of procedural default in its memorandum of decision. It does not appear

"[t]o establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material." *State* v. *Esposito*, supra, 235 Conn. 813. "Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Internal quotation marks omitted.) *Morant* v. *Commissioner of Correction*, 117 Conn. App. 279, 284, 979 A.2d 507, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

The undisclosed evidence at issue in the present case, related solely to Hutchings' identity as a confidential informant, is not exculpatory in nature, but is claimed to be favorable impeachment evidence. "The rule laid out in *Brady* requiring disclosure of exculpatory evidence applies to materials that may well alter . . . the credibility of a crucial prosecution witness. . . . In determining whether impeachment evidence is material, the question is not whether the verdict might have

that the respondent asked the court to rule on the issue of procedural default or otherwise brought the matter to the court's attention.

In his brief, the respondent argues that this court should decline to review the petitioner's *Brady* claim because the petitioner was procedurally defaulted from raising it in the present habeas proceeding (because he could have raised the claim on direct appeal), and the petitioner is unable to satisfy the cause and prejudice standard. See, e.g., *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 385, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002). For the following reasons, we need not reach the procedural default issue. First, the court did not rule on this affirmative defense. See, e.g., *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 600 n.8, 940 A.2d 789 (2008) (reviewing court not bound to consider issue of procedural default when affirmative defense not ruled on by trial court). Second, irrespective of whether cause and prejudice existed to cure a procedural default, the issue before this court is whether the petitioner established that the habeas court abused its discretion in denying the petition for certification to appeal. We must affirm that judgment based solely on our consideration of the petitioner's underlying claims. See *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 449, 936 A.2d 611 (2007) (unresolved issue of procedural default not relevant to determination of whether court properly denied petition for certification to appeal).

been different without any of [the witness'] testimony, but whether the verdict might have been different if [the witness'] testimony [was] further impeached by disclosure of the [undisclosed impeachment evidence]." (Citation omitted; internal quotation marks omitted.) *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 158–59, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).

At the habeas trial, the petitioner presented evidence that Hutchings was a paid informant for the New Haven police department prior to the shooting incident underlying his conviction. The petitioner argues that Hutchings' identity as a paid informant tended to demonstrate her general bias in favor of that department, which investigated the shooting incident, or that she had an interest in testifying for the state. The petitioner argues that the undisclosed evidence was favorable to the defense because it would have suggested that a quid pro quo relationship existed between the police and Hutchings, that her status as an informant gave her an incentive to provide useful information to the police department.

First, we assess whether the evidence was favorable to the petitioner's defense. We fail to see how the fact that Hutchings acted as a paid informant in unrelated cases tended to show that she had a bias in the state's favor or a motive to testify falsely on the state's behalf. It was not disputed that Hutchings provided information to the police concerning the shooting. The evidence showed that she did so as an eyewitness to the shooting. There was no evidence presented at the habeas trial that she was financially compensated for the information that she provided in connection with this case or that she obtained any other type of consideration for her cooperation with the police in relation to the shooting incident. Insofar as the petitioner claims that the undisclosed evidence would have supported an argument

that it was in Hutchings' interest to provide helpful information to the police, we conclude that such an argument was, at best, marginally favorable to the petitioner. Accord *United States* v. *Hamaker*, 455 F.3d 1316, 1328 (11th Cir. 2006) (holding in *Brady* context that information that government witness in criminal prosecution was confidential criminal informant in unrelated criminal investigation was at best marginal impeachment evidence).

In light of our determination that the evidence was, at best, marginally favorable to the petitioner, it follows that the evidence is not material under *Brady*. The record reflects that at the criminal trial the state presented very strong evidence against the petitioner, evidence that placed the petitioner at the scene of the shooting, corroborated the evidence that he was the initial aggressor and demonstrated that he took steps after the shooting to evade police apprehension, steps that included fleeing to South Carolina. The evidence included the petitioner's statement to the police, as well as his testimony at trial, in which he claimed that he shot the victim in self-defense. Hutchings' eyewitness testimony corroborated other evidence that the petitioner was the initial shooter, and she was thoroughly cross-examined by the petitioner's trial attorney, Dakers. On this record, and in light of the marginal impeachment value of the evidence at issue, we conclude that the undisclosed evidence would not likely have had any impact on the jury in its evaluation of Hutchings and, thus, its guilty verdict.

## IV

Finally, the petitioner claims that the court improperly rejected his claim that his prior habeas counsel, McKay, rendered ineffective assistance by failing to raise the *Brady* claim addressed in part III of this opinion. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*,

466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied. . . . As applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. Thus . . . the petitioner will have to prove that . . . prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Citation omitted; internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 133 Conn. App. 96, 101–102, 33 A.3d 883 (2012).

Like the trial court, we reject this claim under the prejudice prong. Our conclusion in part III of this opinion, in which we reject the petitioner's *Brady* claim, necessarily leads us to conclude that there is no reasonable probability that, if McKay had raised such claim in a prior habeas proceeding, the court would have found that the petitioner was entitled to relief.

In conclusion, having evaluated each of the claims advanced by the petitioner, we conclude that he has not demonstrated that resolution of the underlying claims are debatable among jurists of reason, that a court could resolve the claims in a different manner or that the questions involved are of such a nature that they deserve encouragement to proceed further. Accordingly, we conclude that the denial of the petitioner's petition for certification to appeal reflected a sound exercise of the court's discretion.

The appeal is dismissed.

In this opinion the other judges concurred.