******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ARNALDO SAEZ *v.* COMMISSIONER OF
CORRECTION
(AC 37451)

Beach, Mullins and Mihalakos, Js.

*Argued May 10—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*James E. Mortimer*, with whom, on the brief, was
*Michael D. Day*, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Lisamaria T. Proscino*, special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. Following the habeas court's denial of his amended petition for a writ of habeas corpus, the petitioner, Arnaldo Saez, appeals from the judgment of the court denying his petition for certification to appeal. On appeal, the petitioner claims that the court abused its discretion by denying his petition for certification to appeal on the following grounds: (1) his trial counsel rendered ineffective assistance in the presentation of the petitioner's self-defense claim; and (2) the habeas court improperly prohibited the petitioner from testifying that he was the victim of attacks prior to committing the homicide of which he was convicted. We conclude that the court did not abuse its discretion in denying the petition for certification to appeal, and, accordingly, we dismiss the appeal.

The record reveals the following relevant factual and procedural history. At the petitioner's criminal trial, the state presented evidence that in the early morning of July 3, 1994, the petitioner had been a passenger in a van traveling on Benton Street in Hartford. Upon seeing the victim, Lazaro Rodriguez, and Janette Reyes, a friend of both the petitioner and the victim, walking along the street, the petitioner yelled out, "Who own the street?" Reyes assumed the petitioner was joking and responded that she did. The petitioner asked the question again, but this time he directed it to the victim. The victim replied, "What do you mean?" The victim approached the van, and according to Reyes, the petitioner punched the victim in the face. The victim punched the petitioner back.

During the ensuing fight between the victim and the petitioner, the petitioner withdrew a knife from his pocket and stabbed the victim. The victim raised his arm to protect himself and jumped backward to get away from the petitioner. After continuing to stab him in the chest area, the petitioner told the victim, "You dead man. You dead." The petitioner got back into the van and left the scene. The victim died.

The petitioner fled to New York and ultimately was apprehended in California two months later. As he awaited trial, the petitioner informed his cellmate that on the night of the murder he had been at a bar and was "looking to get out and take someone out." He told the cellmate that he had thought he was losing the fight when he took out his knife and began stabbing the victim.

On February 5, 1997, following a trial before a three judge panel, the petitioner was convicted of one count of murder in violation of General Statutes § 53a-54a. He thereafter was sentenced to fifty years incarceration.

The petitioner filed an appeal from his conviction, but he did not pursue the appeal and it was dismissed after his appointed appellate counsel was granted per-

mission to withdraw pursuant to *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (establishing procedure by which appointed counsel may withdraw from criminal appeal on ground of frivolousness). On July 18, 2014, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. On October 30, 2014, in an oral decision, the habeas court denied the petition. On November 12, 2014, the court denied the petitioner's petition for certification to appeal. The present appeal followed.

We begin by setting forth our standard of review following the denial of certification to appeal from the denial of a petition for a writ of habeas corpus. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Wilson* v. *Commissioner of Correction*, 150 Conn. App. 53, 56–57, 90 A.3d 328, cert. denied, 312 Conn. 918, 94 A.3d 641 (2014).

"Finally, we note that [t]he conclusions reached by the [habeas] court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Misenti* v. *Commissioner of Correction*, 165 Conn. App. 548, 559, A.3d (2016).

I

The petitioner argues that the habeas court erred in rejecting his claim that his trial counsel was ineffective in the presentation of the petitioner's claim of self-defense by advising him not to testify and by failing to

offer photographic evidence tending to impeach a key witness for the prosecution. We disagree.

"In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Atkins* v. *Commissioner of Correction*, 158 Conn. App. 669, 675, 120 A.3d 513, cert. denied, 319 Conn. 932, 125 A.3d 206 (2015).

Specifically, the petitioner argues that trial counsel was ineffective in the presentation of the petitioner's self-defense claim because he did not introduce certain evidence, namely, testimony of the petitioner and photographic evidence of lighting conditions at the time of the victim's murder.

"In order sufficiently to raise self-defense, a defendant must introduce evidence that the defendant reasonably believed his adversary's unlawful violence to be 'imminent' or 'immediate.'. . . [A] person can, under appropriate circumstances, justifiably exercise repeated deadly force if he reasonably believes both that his attacker is using or is about to use deadly force against him and that deadly force is necessary to repel such attack." (Citation omitted.) *State* v. *Carter*, 232 Conn. 537, 545–46, 656 A.2d 657 (1995). "A defendant who acts as an initial aggressor is not entitled to the protection of the defense of self-defense. . . . The initial aggressor is the person who first acts in such a manner that creates a reasonable belief in another person's mind that physical force is about to be used based upon that other person." (Citations omitted.) *State* v. *Skelly*, 124 Conn. App. 161, 167–68, 3 A.3d 1064, cert. denied, 299 Conn. 909, 10 A.3d 526 (2010).

## A

The petitioner first argues that trial counsel should have advised him to testify because such testimony was the only way to establish that the petitioner: (1) subjectively believed that, during his fight with the vic-

tim, the victim was using or about to use deadly force; (2) reasonably believed that deadly force was necessary under the circumstances; and (3) could not have retreated with complete safety from the victim.

"It is axiomatic that [i]t is the right of every criminal defendant to testify on his own behalf . . . and to make that decision after full consideration with trial counsel. . . . [A]lthough the due process clause of the [f]ifth [a]mendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Internal quotation marks omitted.) *Coward* v. *Commissioner of Correction*, 143 Conn. App. 789, 799, 70 A.3d 1152, cert. denied, 310 Conn. 905, 75 A.3d 32 (2013). "[T]he presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 186, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 825, 810 A.2d 281 (2002), cert. denied, 262 Conn. 953, 818 A.2d 780 (2003).

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 297, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011).

The record reveals the following additional facts. During the criminal trial, defense counsel introduced a statement made by the petitioner to the Los Angeles Police Department when he finally was apprehended. The statement contained the petitioner's account of what had occurred on the morning of the murder, and it generally was consistent with the self-defense theory the petitioner presented at trial and supported the petitioner's proposition that he had not been the initial aggressor in the confrontation with the victim.[1] The

statement does not include an express reference to the petitioner's state of mind during the confrontation with the victim.[2]

The habeas court concluded that the evidence presented by the petitioner was "woefully lacking in trying to prove any ineffective assistance . . . ." It further rejected the petitioner's claims, noting that "[t]he only thing that could be potentially considered evidence that wasn't presented to the three judge panel, was the self-serving testimony presented by [the petitioner]." The court expressly found that the petitioner's testimony was "less than fully believable" and that he "demonstrated evasiveness." These credibility determinations as well as other evidence in the record overcome the petitioner's assertion on appeal that his testimony at trial "would have strongly supported his defense."

At the habeas trial, the petitioner's trial counsel testified that he had had several tactical reasons for advising the petitioner not to testify on his own behalf: (1) the petitioner would have come "across as a street hustler" to the jury, (2) the petitioner's statement to the Los Angeles Police Department had been admitted into evidence, and (3) there would be "some impeachment as to [the petitioner's] record" regarding the petitioner's gang involvement. Nevertheless, the petitioner argues that counsel should have advised him to testify. The petitioner claims that he would have testified as to relevant subjects not addressed in the statement he had made to the Los Angeles Police Department. The subjects include his subjective belief that the victim was about to use deadly force, that this belief was objectively reasonable, that he had not been the initial aggressor, and that he had been unable to retreat. See General Statutes § 53a-19 (b) (1) (individual is not entitled to use deadly physical force if he can avoid using such force with complete safety by retreating). This testimony, the petitioner reasons, was necessary to establish a viable self-defense claim.

On our review of the record, we conclude that the habeas court properly determined that trial counsel's performance fell within the range of reasonable professional assistance. The petitioner failed to overcome the presumption that counsel's strategic decision to advise the petitioner not to testify was reasonable and the result of counsel's professional judgment. Moreover, at his criminal trial, the petitioner was thoroughly canvassed by the court about his right to testify, and the petitioner does not now claim otherwise or that his waiver was not intelligently or voluntarily made. The circumstances of this case appear to present a classic example of second-guessing trial counsel's performance after it has proved unsuccessful. See *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 297. Accordingly, counsel's decision to advise the petitioner not to testify constituted reasonable profes-

sional judgment.

## B

The petitioner next argues that counsel should have sought to introduce photographic evidence depicting the crime scene with lighting conditions similar to those present in the early morning when the fight began. Such photographs, the petitioner asserts, "would have impeached the testimony of [Reyes]" as it pertained to the petitioner acting as the initial aggressor.

At the petitioner's criminal trial, photographs that depicted the crime scene during daylight hours were introduced into evidence. At the habeas trial, the petitioner introduced photographs that depicted the crime scene in dark early morning conditions. He claims that a comparison of the photographs introduced at the criminal trial and the photographs introduced at the habeas trial reveals that the lighting conditions shown in the latter would impair a witness' ability to "accurately perceive anything visually." Had trial counsel submitted the photographs depicting the poor lighting conditions, the petitioner argues, Reyes' testimony about the petitioner initiating the altercation with the victim would have been called into question; without any such photographs, the trial judges had to speculate as to Reyes' ability to perceive events.

In its memorandum of decision following the habeas trial, the court described the evidence presented by the petitioner to prove trial counsel's ineffective assistance as "woefully lacking." It added that, "[a]s far as any new evidence that would undermine the confidence [in] the conviction, it is next to nothing," and "[t]he court hasn't [seen anything] . . . that would in any way allow [it] to conclude that [trial counsel] did anything other than properly investigate this matter."

The record reveals that trial counsel thoroughly cross-examined Reyes with respect to the lighting at the time of the murder, her vantage point, and her general ability to observe the petitioner and the victim as they fought. The petitioner asserted that he had not been able to overcome the presumption that he was the initial aggressor because trial counsel did not impeach Reyes with photographs; yet, it is not clear how the introduction of the early morning photographs would have impeached Reyes' testimony,[3] and the petitioner has made no claim that the cross-examination itself was otherwise deficient. Counsel's strategic decision to challenge Reyes' ability to see the altercation through cross-examination—as opposed to introducing photographic evidence of the lighting conditions—was an exercise of sound professional judgment.

The petitioner has failed to satisfy the performance prong of *Strickland*; see *Strickland* v. *Washington*, supra, 466 U.S. 687–91; therefore, the habeas court did not err in concluding that trial counsel did not provide

the petitioner with ineffective assistance at his criminal trial.[4]

## II

We next consider the petitioner's claim that the habeas court abused its discretion in its evidentiary rulings at the habeas trial. The court precluded the petitioner's testimony as to certain attacks on him in the period of time prior to his stabbing the victim. He argues that this evidence "would have been offered to prove that the petitioner had a subjective fear for his life during [the fight with the victim] and that his fear was objectively reasonable. Ultimately, such evidence would have been used to prove that trial counsel was ineffective for failing to elicit such evidence to prove that the petitioner was entitled to a claim of self-defense." We conclude that any error resulting from the exclusion of this evidence was harmless.

The standard of review for evidentiary claims is well established. "Unless an evidentiary ruling involves a clear misconception of the law, the [habeas] court has broad discretion in ruling on the admissibility . . . of evidence. . . . The [habeas] court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the [habeas] court's ruling . . . ." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 602–603, 940 A.2d 789 (2008). "Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *Gibson* v. *Commissioner of Correction*, 135 Conn. App. 139, 152, 41 A.3d 700, cert. denied, 305 Conn. 922, 47 A.3d 881 (2012).

At the habeas trial, the petitioner attempted to offer testimony that he had been attacked previously within the three months preceding his fight with the victim on July 3, 1994. Members of the Latin Kings, a gang, allegedly shot at the petitioner on April 15, 1994, and two of the petitioner's acquaintances allegedly attacked him with a knife at a bar on June 24, 1994. The court sustained two objections made by the respondent, the Commissioner of Correction, on the ground of relevancy. The petitioner submitted an offer of proof the following day; the court noted its filing, but it did not comment on it further. The petitioner posits that his testimony about the prior attacks would have been relevant to a finding of subjective fear and the reasonableness of the fear at the criminal trial, and, thus, the evidence was relevant to his substantive claim at the habeas trial that counsel was ineffective by advising him not to testify. Had he testified about the prior assaults, the petitioner reasoned, the tribunal would have heard additional facts tending to support his claim

of self-defense.

It is unclear from the record whether the circumstances of the prior attacks had any similarity to the circumstances of the confrontation between the petitioner and the victim; if the circumstances of the prior attacks were entirely different from the circumstances of the fight in this case, it is possible that the prior attacks might not have been relevant to the petitioner's underlying self-defense claim. If it is assumed, however, that the circumstances were similar enough so that the testimony of the prior attacks was relevant to the self-defense claim, and it is further assumed that trial counsel knew or should have known of these prior assaults, then it is conceivable that the petitioner's testimony about these attacks would have been relevant to the petitioner's claim that counsel provided ineffective assistance.

Nevertheless, the preclusion of this testimony from the habeas trial was harmless in any event because, for the reasons we stated in part I of this opinion, trial counsel's overall trial strategy—even in light of the petitioner's allegations of the prior attacks—constituted reasonable professional judgment. Counsel testified at the habeas trial that, among other reasons, he had advised the petitioner not to testify because his testimony would suggest possible gang involvement. The introduction of any evidence about an attack on the petitioner by a gang, then, would have been inconsistent with that strategy, in that it would at the very least raise the specter of gang involvement. Moreover, the evidence of the prior attacks, though perhaps marginally relevant to the self-defense claim, likely would not have changed the outcome of the criminal trial. Beyond having the potential to support the proposition that the petitioner generally may have been fearful, there is no indication that evidence about prior attacks had any correlation to the petitioner's specific self-defense claim as it pertained to the victim and to the fight in this case. For these reasons, the preclusion of the petitioner's testimony at the habeas trial could not reasonably have affected the conclusion of the habeas court that counsel provided effective assistance at the petitioner's criminal trial; therefore, the preclusion of the testimony was at most harmless.

In light of the foregoing, we conclude that the habeas court properly denied the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner's statement provided in relevant part: "Suddenly, [the victim] approached the van and began to strike me in the face with his fists. He hit me several times through the open window. I managed to open the van door and stepped out of the vehicle. [The victim] continued to attack me with his fists. He never let up. I was feeling the [effects] of the blows. I removed a pocket knife from my right jeans pocket. It had a three inch blade. I kept it in . . . my jeans. I managed to open the blade as I crouched

alongside the van trying to move away from him. I had the knife in my left hand and struck my left hand out toward [the victim] to stop the attack on me. I don't know if I struck him or not. I may have. I made repeated attempts to stab him. He beat me until we reached the back of the van. Then he backed away a couple of feet and was bouncing like a boxer. I did not see any blood on him. I had blood on my [shirt] but I thought it was mine. . . . I got into the van and the guy drove off."

[2] It is arguable that elements of intent could be inferred from the statement the petitioner made to the Los Angeles Police Department.

[3] In fact, the photographs may have supported Reyes' testimony. Reyes testified that when she observed the fight between the petitioner and the victim, it had been nighttime, and it was very dark. She also testified that the only lighting came from a single streetlight. The photographs, which show the crime scene at nighttime, then, are consistent with Reyes' testimony.

[4] We need not address the petitioner's claim that prejudice resulted from counsel's performance. See *Atkins* v. *Commissioner of Correction*, supra, 158 Conn. App. 675 ("[b]ecause both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim" [internal quotation marks omitted]).

––––––––––––––––––––––––––––