******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL MISENTI *v.* COMMISSIONER
OF CORRECTION
(AC 37091)

DiPentima, C. J., and Gruendel and Keller, Js.*

*Argued January 4—officially released May 17, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Bright, J.)

*Jeanne M. Zulick*, assigned counsel, for the appel-

lant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David M. Carlucci*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Michael Misenti, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion in denying certification to appeal from the determination that Richard Grabow, the petitioner's trial counsel, had not rendered ineffective assistance, and (2) improperly denied the motion to withdraw from the case filed by the petitioner's habeas counsel, David B. Rozwaski, at the start of the habeas trial. We dismiss the petitioner's appeal.

The court set forth the following factual findings and procedural history in its memorandum of decision. In November, 2013, while operating his computer, the petitioner visited an adult only website "through which he sought customers for gay pornographic videos." Through that website, he met and began communicating with the victim, whom the petitioner believed to be an adult but was, in fact, a fourteen year old male. The petitioner made arrangements to meet the victim in person for the purpose of selling him pornographic videos.

The petitioner went to the victim's home and provided him with a bag containing videos and a "sex toy." The victim later told the police that the petitioner had kissed him, had touched his buttocks and had placed his mouth on the victim's penis. Prior to his arrest or being in custody, the petitioner admitted to the police that he had kissed the victim. At the habeas trial, however, the petitioner denied that any physical contact had occurred.

The petitioner was arrested and charged with attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-71, sexual assault in the fourth degree in violation of General Statutes § 53a-73a, use of a computer to entice a minor in violation of General Statutes § 53a-90a, and risk of injury to a child in violation of General Statutes § 53-21. The petitioner retained Grabow to represent him.

Grabow filed a broad discovery request and had numerous discussions with prosecutors regarding a plea agreement. Grabow also met with the petitioner several times and explained the offers from the state. He also explained the elements of the charges to the petitioner, as well as the evidence that the state intended to introduce at trial. Although the petitioner maintained that he had not violated any criminal statute because he had believed that the victim was at least sixteen or seventeen years old, Grabow explained that a mistake about the victim's age was not a defense to the charges of risk of injury and sexual assault in the fourth degree.[1]

On September 8, 2004, the petitioner and Grabow

appeared for jury selection. At the outset, the criminal trial court told the petitioner that he had to decide if he was going to accept the state's offer or proceed to trial. The court further explained that once the jury selection process began, "all bets are off on whatever plea bargaining has occurred before today." After some brief discussion, it notified the parties that jury selection would start after a thirty minute recess.

After the recess, the court noted that parties had reached an agreement. As noted by the habeas court, "[t]he petitioner agreed to accept the [state's] offer so long as he could do so through a plea of nolo contendere and under the *Alford* doctrine."[2] The state filed a substitute information charging the petitioner with risk of injury to a child in violation of § 53-21 (a) (2) and sexual assault in the fourth degree in violation of § 53a-73a. The parties agreed that the petitioner would be sentenced to ten years incarceration, execution suspended after six months, ten years probation, no contact with the victim, and sex offender registration and treatment.

The court then made the following statement to the petitioner: "Mr. Misenti, you've entered a nolo plea. That means you're not agreeing to any of the facts stated by the state's attorney just now, all right? It also gives you a certain amount of protection if there's any civil suits. But you know that, under those facts, I will be making a finding of guilty under the charges as well the facts, through you're not admitting—or even denying, at this time—to the point that you just don't want to take the chance of going to trial and taking the chance that a jury might feel otherwise and the state might be able to get a conviction; is that true?" The petitioner responded that he was not guilty of these charges and that "[t]his thing is taking a tremendous physical and emotional toll on me, and I feel I cannot proceed with a trial." He further explained that he was not mentally or physically capable of proceeding. The court then explained the differences between a nolo contendere plea and a plea made pursuant to the *Alford* doctrine.

The petitioner maintained that he did not believe that he was guilty of the charges and that the only reason that he could not proceed was the emotional and physical toll on him. The court replied that it would not accept an *Alford* plea. Grabow indicated that the *Alford* plea would be withdrawn. The court stated: "The nolo does not require that requirement; so it's a nolo plea, for the reasons stated by [the petitioner]. All right. Okay. So solely nolo. All right. Have you had enough time to think about this?" The petitioner responded: "Not really. I would have liked more time, but my attorney told me that I had to make a decision now." The court responded that it could not accept the nolo contendere plea if the petitioner felt he did not have enough time to think about it. The court agreed to Grabow's suggestion of a brief recess. During this second recess, the petitioner

went to his car and ingested Klonopin, his prescribed antianxiety medicine. Grabow knew that the petitioner was receiving treatment for mental health issues but the petitioner did not inform him that he took Klonopin during the recess.

After the proceeding resumed, Grabow indicated that a written plea of nolo contendere had been filed. The state then offered the following recitation of facts. The victim and the petitioner had been in contact via an online instant messaging system and then spoke on the telephone. The petitioner arranged an in person meeting at the victim's home. "While in the house . . . [the petitioner] and [victim] allegedly kissed, and the [petitioner] allegedly touched the [victim's] buttocks; he pulled away. He then was, allegedly, Your Honor, according to the statement, allegedly put his mouth on the [victim's] penis. He then was told to leave, Your Honor, by the [victim]. He did comply with that and left . . . ."

The petitioner informed the court that he did not agree with the facts as stated by the prosecutor. The court responded: "That's the nolo plea. You're not admitting to those facts . . . ." The petitioner interrupted the court and stated that the charges were "absolutely false." The court, after pointing out that a nolo plea afforded certain protections in a possible civil action, iterated that "[t]hat's what the nolo plea is. You're not admitting anything . . . ." The court then conducted a plea canvass where the petitioner acknowledged, inter alia, that he had enough time to consider the plea, that he had spoken with his attorney, that Grabow had explained the charges against him and the potential penalties that he faced. The petitioner stated that he understood everything that the court had said and that no one had forced him to make the decision to enter the nolo plea. The court accepted the plea as made voluntarily, intelligently and with the effective assistance of counsel.

In the following weeks, the petitioner changed his mind and told Grabow that he wanted to withdraw the plea. On October 13, 2004, Grabow wrote to the petitioner to inform him that he would not file the motion to withdraw until he spoke to the petitioner on October 19, 2004. The petitioner ultimately decided that he did not want the plea vacated, so Grabow did not file the motion.

The sentencing hearing occurred on January 20, 2005. At the outset, the prosecutor recommended a ten year period of incarceration, execution fully suspended. The prosecutor stated that on September 8, 2004, he had recommended that the petitioner serve six months, but as a result of further conversation with the victim, he was now recommending a fully suspended sentence. The court and the prosecutor also addressed the fact that the victim had returned to the website and again

misrepresented his age and had made a reference that he had "chickened out" in his meeting with the petitioner. The court agreed to impose the sentence as recommended by the prosecutor.

In an amended petition for a writ of habeas corpus, the petitioner alleged that Grabow has rendered ineffective assistance of counsel in a variety of ways,[3] and sought to have his conviction vacated and his plea withdrawn. On February 25, 2014, Attorney Rozwaski filed a motion to withdraw his appearance as habeas counsel pursuant to Practice Book § 3-10 (b).

The court held a trial on February 26, 2014, and, at the outset, addressed Rozwaski's motion. After hearing from the petitioner and Rozwaski, the court denied the motion to withdraw and declined to appoint new counsel for the petitioner. After further discussion, the petitioner elected to proceed with Rozwaski as his attorney. During the habeas trial, Rozwaski called Grabow and the petitioner as witnesses.

On July 2, 2014, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. Relevant to this appeal, the court determined that the claim that Grabow had failed to investigate and discover that the victim was "still entering websites by misrepresenting his age even after the petitioner was arrested" was without merit. Specifically, the court credited Grabow's testimony that he knew on the morning of September 8, 2004, prior to the petitioner's plea, that the victim continued to engage in such conduct. The court further observed that Grabow's knowledge of this conduct helped him to secure the plea offer that the petitioner accepted. In regards to the claim that Grabow had failed to explain the elements of the crimes to which the petitioner pleaded guilty, or the factual bases for those charges, the court credited Grabow's testimony to the contrary. The court also rejected the claim that Grabow improperly had failed to file a motion to withdraw the guilty plea, noting that although the petitioner had asked Grabow to file such a motion, there was evidence that the petitioner changed his mind prior to sentencing and did not want such motion filed. With respect to the petitioner's claim that his plea had been made while under the effects of Klonopin, the court noted that there was no evidence that the petitioner had taken this medication, nor was there evidence regarding how quickly it took effect, and what effect it had. "Given the short nature of the recess, approximately twelve minutes, the court cannot just assume that the petitioner was under its effects at the time he entered his plea." Finally, the court concluded that the petitioner had failed to sustain his burden of establishing that he would have insisted on going to trial.

On July 10, 2014, the petitioner filed his petition for certification to appeal the denial of his petition for a

writ of habeas corpus. He set forth five specific grounds as the bases for his appeal.[4] The court denied the petition for certification on July 16, 2014. This appeal followed.

I

The petitioner first claims that the habeas court abused its discretion in denying certification to appeal from the determination that Grabow had not rendered ineffective assistance of counsel. Specifically, the petitioner argues that Grabow was ineffective by failing to (1) investigate the victim's credibility and (2) move for a continuance before the plea canvass and later to withdraw the petitioner's plea because it was not made knowingly, intelligently and voluntarily. We conclude that the court did not abuse its discretion in denying certification to appeal the claim of ineffective assistance of counsel.

We begin by setting forth our standard of review following the denial of certification to appeal from the denial of a petition for a writ of habeas corpus. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. . . . This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 562–63, A.3d (2016); see also *Fine* v. *Commissioner of Correction*, 163 Conn. App. 77, 80–81, A.3d , cert. denied, 320 Conn. 925, A.3d (2016).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the

effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 351, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013); see also *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100–101, 111 A.3d 829 (2015).

"Under . . . *Hill* [v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)] . . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Patterson* v. *Commissioner of Correction*, 150 Conn. App. 30, 35, 89 A.3d 1018 (2014); see also *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015).

Finally, we note that "[t]he conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

We now address the specifics of the petitioner's appeal.[5] First, the petitioner claims that Grabow was ineffective by failing to investigate the victim's credibility and his continued misrepresentation of his age in order to access the website, especially given the comments of the prosecutor during the sentencing proceeding. Specifically, the petitioner contends that he was not aware of this information regarding the victim and, if he had been, he would have proceeded to trial. We are not persuaded.

The habeas court made two credibility determinations relevant to this claim. First the court concluded that Grabow "testified credibly that he knew on the morning of September 8, 2004, before the petitioner entered his plea, that the victim was still engaging in such activity." The court further concluded that the petitioner's contention that he was unaware of the victim's ongoing activities until two years later was not credible. "In fact, the transcript of the petitioner's sentencing makes it clear that everyone present, including

the petitioner, knew that the victim was still visiting such websites."

"[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Mincewicz* v. *Commissioner of Correction*, 162 Conn. App. 109, 112, 129 A.3d 791 (2015); see *Brown* v. *Commissioner of Correction*, 161 Conn. App. 770, 773, 129 A.3d 172 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016); see also *Couture* v. *Commissioner of Correction*, 160 Conn. App. 757, 770, 126 A.3d 585 (axiomatic that appellate court cannot pass on credibility of witnesses), cert. denied, 320 Conn. 911, 128 A.3d 954 (2015). We refrain from invading the province of the habeas court to determine the credibility of Grabow and the petitioner, and employ our customary deference as a reviewing court. Accordingly, we conclude that the petitioner's claim of ineffective assistance for the failure to investigate the credibility of the victim fails and, thus, that the court did not abuse its discretion in denying certification to appeal this issue.

Second, the petitioner claims that Grabow was ineffective for failing to move for a continuance before the plea canvass and subsequently for failing to move to withdraw his plea. Specifically, the petitioner contends that he did not understand the plea due to his ingestion of Klonopin and Grabow's failure to explain the charges adequately. With respect to the latter, the court determined that Grabow testified credibly that he had fully explained the elements of the crimes of which the petitioner pleaded, as well as the factual bases for the charges. Later, the court noted that "[t]here is no question that [the petitioner] understood the proceedings and what he was doing." Deferring to the habeas court on matters of credibility, we conclude that this argument must fail.

With respect to the petitioner's claim that he did not make a knowing, intelligent and voluntary plea as a result of his ingestion of Klonopin during a recess in the proceedings, the court rejected it for several reasons. First, there was no evidence that Grabow knew that the petitioner had taken Klonopin during the recess. Second, the petitioner failed to present evidence during the habeas trial regarding "how quickly Klonopin becomes effective and what effects it has. Given the short nature of the recess, approximately twelve minutes, the court cannot just assume that the petitioner was under its effects at the time he entered his plea." Third, the court concluded that the record and the evidence presented during the habeas trial estab-

lished that the petitioner was not impaired at the time of the plea. Specifically, it found that the petitioner was lucid and appeared to understand the court's questions during the canvass.

We agree with the habeas court that the petitioner's claim fails as a result of the absence of evidence regarding the time it takes for Klonopin to affect an individual. It is not enough for the petitioner to allege that his plea was not intelligently, knowingly and voluntarily made due to his use of Klonopin. He was required to establish that he actually was impaired by his use of that medication. See *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 207, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004). As a result of this evidentiary gap, we cannot conclude that Grabow was ineffective for not requesting a continuance or moving to withdraw the plea.

None of the claims regarding Grabow's performance is debatable among jurists of reason, could be resolved in a different manner or deserve encouragement to proceed further. In other words, the habeas court did not abuse its discretion in denying certification to appeal from the denial of the petitioner's claim that Grabow provided ineffective assistance of counsel.

II

The petitioner also claims that the court improperly denied Rozwaski's motion to withdraw as habeas counsel. Specifically, he argues that the court abused its discretion because there was a total lack of communication between himself and Rozwaski that prevented adequate representation. The respondent, the Commissioner of Correction, counters that this claim is not properly before this court because it was not within the list of grounds for appeal attached to the petition for certification to appeal. We agree with the respondent.

As we noted previously, the petitioner set forth five bases for grounds of his appeal from the decision of the habeas court, all of which pertained to the conduct of Grabow, not Rozwaski. See footnote 4 of this opinion. Simply put, the claim regarding the denial of the motion to withdraw filed by Rozwaski was not part of the petition for certification to appeal. "We have stated that when a petitioner does not raise a specific claim in the petition for certification to appeal, we cannot conclude that the court abused its discretion in denying the petition for certification with respect to that claim." *Fine* v. *Commissioner of Correction*, supra, 163 Conn. App. 82. Review of this claim would amount to an ambuscade of the habeas judge. *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216–17, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013); *Perry* v. *Commissioner of Correction*, 131 Conn. App. 792, 796, 28 A.3d 1015, cert. denied, 303 Conn. 913, 32 A.3d 966

(2011). Accordingly, we decline to consider it. *Fine* v. *Commissioner of Correction*, supra, 82; *Tutson* v. *Commissioner of Correction*, supra, 216–17; *Perry* v. *Commissioner of Correction*, supra, 797.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Grabow did opine that the victim's misrepresentation of his age could help the petitioner's case with respect to the charge of sexual assault in the second degree.

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Celaj*, 163 Conn. App. 716, 718–19 n.3,      A.3d      (2016).

[3] Specifically, the petition alleged that Grabow was ineffective as follows: "[Grabow] . . . did not investigate the alleged victim's statements as to whether or not false information had been provided regarding the victim's activities . . . [Grabow] did not seek to suppress the petitioner's statements to the police when the petitioner maintained that he had been questioned without being advised of his rights . . . [t]hat at the time of the petitioner's plea, the petitioner informed the court that he was not willing to proceed and that due to mental health problems, emotional, physical and other issues, he did not want to go forward with the scheduled trial that day nor with the proposed plea agreement, and that [Grabow] did not seek a continuance for the petitioner . . . [Grabow] did not properly explain the factual basis and the nature of and legal elements of the charges to the petitioner . . . [Grabow] did not seek to withdraw the petitioner's guilty pleas when the petitioner stated to the court that he was insisting upon his innocence and the court had improperly canvassed and accepted the petitioner's pleas, despite the petitioner's insistence upon his innocence . . . [Grabow] did not seek to determine if the medication that the petitioner was [taking] on the date of his pleas impacted the petitioner's ability to knowingly, voluntarily and with understanding enter into his guilty pleas and . . . [t]hat the petitioner did not want to plead guilty and wanted to proceed to trial with his case, but that [Grabow] did not seek to withdraw the petitioner's guilty pleas, nor to vacate the court's findings after the pleas were improperly accepted by the court."

[4] Specifically, the petitioner's grounds for certification to appeal stated: "Counsel for the petitioner . . . hereby submits the following grounds upon which he proposes to seek certification to appeal.

"1. Whether or not the habeas court erred in finding that trial counsel was not deficient in his failure to conduct a sufficient investigation regarding the victim's statements to the police regarding his activities;

"2. Whether or not the habeas court erred in finding that trial counsel failed to seek a continuance when the petitioner informed him that he was not prepared to go forward with either a plea nor the trial;

"3. Whether or not the habeas court erred in finding that trial counsel was not ineffective in explaining the factual and legal basis of the charges to the petitioner so that the petitioner could make a knowing and voluntary plea;

"4. Whether or not the habeas court erred in finding that trial counsel had failed to move to withdraw the petitioner's guilty pleas;

"5. Whether or not the habeas court erred in finding that trial counsel's deficient performance was not prejudicial to the petitioner—particularly when the petitioner insisted that he wanted to have a trial;

"6. Whether or not the habeas court erred in denying the certification to appeal; and

"7. Such other errors as may become evident after a review of the transcripts and the trial record."

[5] With respect to the petitioner's claim regarding Grabow, the habeas court concluded that the petitioner had failed to establish both the deficient performance and the prejudice prongs of the *Strickland/Hill* test.